**Luz G. Munoz,**

<em>Plaintiff,</em>

**v.**                                                 **Case No. 3:17-cv-023**
                                                       **Judge Thomas M. Rose**

**Rushmore Management Loan Services LLC,**

<em>Defendant.</em>

---

**ENTRY AND ORDER GRANTING PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, (ECF. 6), AND GRANTING PLAINTIFF'S MOTION TO FILE SUR-REPLY (ECF 15).**

---

Pending before the Court are Defendant Rushmore Management Loan Services LLC's Partial Motion to Dismiss Plaintiff Luz G. Munoz's Complaint for Failure to State a Claim, ECF 13, and Plaintiff's Motion to File Sur-Reply. ECF 15. Plaintiff's Motion to File Sur-Reply, ECF 15, is **GRANTED**. The Complaint charges Defendant with six claims: defamation, breach of contract, breach of an implied covenant of good faith and fair dealing, and violations of the Fair Debt Collection Practices Act ("FDCPA"), the Real Estate Settlement Procedures Act ("RESPA") and the Truth in Lending Act ("TILA"). (Doc. 1). Defendant's motion seeks to dismiss all but the breach of contract and RESPA claims, not so much for failure to state a claim, but as barred by the statute of limitations.

### I.      Background

In 2000, Plaintiff Luz G. Munoz executed a fixed rate consumer note in the principal amount of $102,320.50 in favor of National City Bank ("NCB"). Complaint Ex. A, p. 1, ¶ B. To secure repayment of the note, Munoz executed a mortgage, giving NCB a security interest in 3955 Klepinger Road, Dayton, Ohio 45416 ("Property"). Id., ¶¶ A and B. ("Mortgage," collectively with the Note, the "Loan")

By April 1, 2012, Quantum Mortgage Servicing was servicing the loan and Arch Bay Holdings LLC owned it. Complaint, ¶¶ 7-9 and Ex. A. To resolve an ongoing adversary case in a prior bankruptcy proceeding, Munoz entered into a Settlement Agreement and Release of Claims, with Quantum Mortgage Servicing and Arch Bay Holdings. The agreement constituted a loan and applied to subsequent agents or assignees, including Rushmore and BOC. Id., ¶ 10.

The parties agreed that Munoz would execute a Loan Modification Agreement reducing the unpaid principal balance on the Note and extending the maturity date. Complaint ¶ 11 and Ex. A., p. 2, ¶ A. They also agreed that Munoz would continue to pay on a payment plan with Montgomery County to bring the Property's taxes current. Complaint Ex. A, p. 2, ¶ I.

In August 2012, Quantum transferred servicing of the loan to Rushmore. Complaint, ¶ 15. In December 2012, Munoz's counsel contacted Rushmore about allegedly inaccurate information Rushmore was providing regarding the unpaid principal balance for the loan, inaccurate reporting of late payments made on the loan in 2012 and inaccurate reporting of delinquent escrow balances and corporate advance amounts. Id., ¶ 16. On January 17, 2013, Rushmore responded and included a payment history for the loan, which said that the unpaid principal balance was $66,150, the escrow balance was $0, there were no corporate advances or other amounts owed and Plaintiff's January 2013 payment had not been received. Id., ¶ 18 and Ex. B.

In June 2013, Munoz received a letter from Rushmore that the Loan was in default and that amounts were owed to bring the Loan current. Complaint, ¶¶ 19-20. Munoz's counsel wrote to Rushmore both before and after receiving the notice of default. Munoz asserted that the escrow account for her loan was incorrect, that she had made all required monthly mortgage payments since execution of the Loan Modification Agreement, that her account should not be listed in bankruptcy as she received a discharge and that the reopened bankruptcy was resolved by execution of the Agreement. Munoz asserted that any issue with the property taxes was because Rushmore improperly paid the taxes, even though the Agreement called for Munoz to pay them in the Agreement and because the monthly payment on the loan may have been increased without accounting for increased escrow requirements without her knowledge. Complaint, ¶ 21.

Rushmore responded, requesting proof that Munoz had made all monthly mortgage payments, while allegedly not responding to the request to resolve any discrepancy or shortage in the Loan's escrow account. Complaint, ¶¶ 22-23.

From August 2013 to August 2014, Munoz alleges she continued to make her monthly mortgage payment, believing she was current. Complaint, ¶ 24. In August 2015, Munoz asked Rushmore for a payoff statement for the Loan, at which point Rushmore informed Munoz that the unpaid principal balance was $48,978.18, and that Munoz owed the following: $2,200 for an escrow shortage, $573.03 for late charges, $8,475.24 for corporate advances, $16.50 for property inspection fees, and $573.03 for interest through October 31, 2015. Complaint, ¶ 26 and Ex. C.

On October 21, 2015, Munoz sent Rushmore a letter she alleges was a Notice of Error requesting a payoff statement for the loan, and alleging errors on the loan including failure to record payments made in August and September 2015, "[m]isapplication of payments as to principal, interest and escrow"; "[e]xcessive charges continue to be listed with corporate advances

identified to the loan account of over $8,475.24"; payments recorded late; imposition of corporate advances that were waived by the Loan Modification Agreement; untimely transfer of information during the transition from Quantum to Rushmore; and failure to send Munoz monthly billing statements. Complaint, ¶ 27 and Ex. D.

In November 2015, Rushmore sent correspondence to Munoz stating the loan was delinquent and that Rushmore may pursue foreclosure if the default was not cured by making certain payments. Complaint, ¶¶ 33-34. A letter dated January 14, 2016, informed Munoz that Rushmore was transferring servicing of the Loan to Select Portfolio Servicing. Id.

Munoz's December 4, 2015 letter disputed Munoz's default and noted the "numerous errors" that were in the October 21 letter. On January 19, 2016, Rushmore responded, saying that it is "in response to your correspondence, dated December 4th, 2015[.]" Complaint Ex. E.

The January 19, 2016, Rushmore letter explained it investigated the issues and did not identify any errors. Complaint Ex. E. Rushmore claimed that it:

> did receive an attempted payment for this loan on August 31, 2015 (check #126 in the amount of $906.61). This payment was returned on the same date, due to an incorrect payee. Rushmore could not have applied the payment to Luz Munoz's account due to the payee issue. No other payments were received for this loan during August or September 2015.

Id.

Rushmore's explanation was that the principal and interest payment for the loan was $717.90, that Munoz's payments were not misapplied and that late fees are assessed if the payment is received after the expiration of any grace period in the note. Id. Rushmore claimed that Munoz had received monthly billing statements without interruption since Rushmore started servicing the loan. Id. Rushmore claimed that the Loan Modification Agreement did not require Rushmore to

waive corporate advance fees and Rushmore found no documentation stating the corporate advance fees were waived. Id. Finally, Rushmore provided an updated payoff statement. Id.

On January 29, 2016, Munoz attempted to clarify issues with missing payments in August and September 2015, and attempted to issue "Replacement Payments." Complaint, ¶¶39- 40. "On Plaintiff's best knowledge and belief Plaintiff made the August and September 2015 payments and Rushmore [either] never cashed or returned the checks for those payments." Id. at ¶ 40. "Rushmore has failed to credit the Loan . . . or provide [Select Portfolio Servicing] with the Replacement Payments." Due to Rushmore's alleged failure to apply payments, Munoz had to make additional payments to Select Portfolio Servicing and incur attorney fees. Complaint, ¶ 43.

Munoz asserts several claims for relief. First, she alleges that Rushmore defamed her by "its knowing publication to third-parties of erroneous information" that Munoz was in default and "public humiliation of Plaintiff." Complaint, ¶ 64. Munoz alleges that "[t]he untrue representations of . . . Rushmore had the effect of publishing to the credit bureaus, financial institutions and the community at large that Plaintiff had not made payments she was required to make, when in fact Plaintiff had made such payments." Id., at ¶ 71.

Next, Munoz alleges that Rushmore failed to correctly and timely apply payments in breach of the note, mortgage, agreement, and Loan Modification Agreement. Complaint, ¶¶ 73-77. Munoz alleges that due to the alleged breach of the Note, Mortgage, Agreement, and Loan Modification Agreement, Rushmore is liable for breach of the implied covenant of good faith and fair dealing. Id, ¶¶ 83-92.

Then Munoz alleges that Rushmore violated the FDCPA by misrepresenting that the loan was in default, claiming she owed corporate advances and other expenses, reporting her loan as in

default to credit reporting agencies, and refusing to correct errors identified by her. Complaint, ¶¶ 93-96.

Munoz alleges that Rushmore violated RESPA by failing to provide her with an accurate payoff statement, timely credit payments, correct errors in response to the October 21 letter, and respond timely to the October 21 letter. Complaint, ¶¶ 97-102.

Munoz alleges that Rushmore violated TILA by failing to provide an accurate payoff statement since receiving her request in September 2015, and failing to timely and accurately apply payments since April 2013. Complaint, ¶¶ 104-107. Finally, Munoz alleges that Rushmore "lost" the monthly payments Munoz sent in August 2015 and placed monthly payments in suspense and applied portions of payments to inaccurate escrow shortages. Complaint, ¶ 107.

## II. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is facially plausible when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gilliam v. Crowe*, No. 3:16-cv-147, 2016 U.S. Dist. LEXIS 100235, * 5 (S.D. Ohio, Aug. 1, 2016) (internal quotations omitted) (quoting Iqbal, 556 U.S. at 678). This standard is not the same as a probability standard, but "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotations omitted).

"Although this pleading standard does not require detailed factual allegations, it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Gilliam*, 2016 U.S. Dist. LEXIS 100235, * 4-5 (S.D. Ohio, Aug. 1, 2016) (internal quotations omitted) (quoting *Iqbal*,

556 U.S. at 678). When ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true and construe them in a light most favorable to the nonmoving party. Id. (citing *Twombly*, 550 U.S. at 554-55). "The Court need not accept as true, however, a legal conclusion couched as factual allegations." Id. (internal quotations omitted) (quoting *Twombly*, 550 U.S. at 555).

In ruling on a motion to dismiss, courts consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice. *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 924-25 (N.D. Ohio 2009); *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999); see also Fed. R. Civ. P. 10(c).

### III. Analysis

Plaintiff concedes that her defamation claim is barred by the statute of limitations. ECF 11, PageID 77. She also concedes that her claims for breach of implied covenant of good faith and fair dealing are barred as well. Id. This leaves Munoz's FDCPA and TILA claims, since Defendant does not contest Munoz's breach of contract and RESPA claims.

### A. FDCPA Claims

Defendant also seeks to bar Plaintiff's FDCPA claim by means of the statute of limitations. Munoz alleges that Rushmore violated the FDCPA by declaring the loan to be delinquent and attempting to collect corporate advances. Actions under the FDCPA are subject to a one-year statute of limitations, which runs "'from the date on which the violation occurs.'" *Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 Fed. App'x 268, 273 (quoting 15 U.S.C. § 1692k(d)). Statutes

of limitations can be tolled as a result of a "continuing violation," but courts do not apply the continuing violation doctrine to FDCPA claims. *Slorp v. Lerner, Sampson & Rothfuss*, 587 Fed. Appx. 249, 258-59 (6th Cir. 2014).

Here, Munoz alleges Rushmore told her that she owed corporate advances in August 2015. Complaint, ¶ 26 and Ex. C. Munoz also alleges that Rushmore told her she was in default in June 2013 and November 2015. Complaint, ¶¶ 19-20, 33-34. Claims based on these actions are certainly time-barred.

Plaintiff contends, however, that an FDCPA violation can be based upon: Rushmore's allegedly inadequate response to Plaintiff's Notice of Error which was allegedly not issued until Rushmore's response letter dated January 19, 2016, ¶30; Rushmore's January 19, 2016 Notice of Error response to Plaintiff (Exhibit E of Complaint) that allegedly did not correct errors identified by Plaintiff, ¶36; and Rushmore's January 19, 2016 Notice of Intent to Foreclose asserts delinquent payments of $3,489.69. (Exhibit A). This last letter was received by Plaintiff sometime in February 2016. The notice is dated 5 days after the Rushmore notice of transfer of the servicing of the loan account to Select Portfolio Servicing which was to be effective as of January 29, 2016. ¶ 37.

On January 29, 2016, Rushmore transferred the servicing of the loan to Select Portfolio Servicing allegedly without transferring to Select Portfolio Servicing payments Plaintiff made to Rushmore. On February 4, 2016, Select Portfolio Servicing informed Plaintiff that it considered Plaintiff's loan to be in default and delinquent. (Exhibits B and C) Select Portfolio Servicing's Notice of Debt Owed contains the same accounting of delinquent debt and alleged corporate advances as Rushmore asserted in its notice of error response received by Plaintiff on February 2, 2016. ¶ 38.

Munoz contends that Rushmore's January 19, 2016 response was inadequate and not received by Plaintiff until February 2, 2016. ¶31. Munoz also contends that Rushmore's actions resulted in Plaintiff having to incur additional cost to resolve the erroneous loan information provided to Select Portfolio Servicing by Rushmore as late as February 2016. ¶43-44. Finally, Munoz contends Rushmore failed to make corrections to the Loan and reported the Loan as delinquent and in default until sometime in mid-year 2016. ¶ 58 and Complaint Exhibit E.

Plaintiff alleges discrete violations by Rushmore. The Sixth Circuit has recognized that for FDCPA purposes, a separate dunning letter may constitute a separate violation of the FDCPA. *Michalak v. LVNV Funding LLC*, 2015 WL 2214792, at *1 (6th Cir. May 12, 2015) See also *Head v Ocwen Loan Servicing LLC*, 14 CV 1363, (D. Kan. July 14, 2015); *Purnell v. Arrow Fin. Servs., LLC*, 303 F. App'x 297, 301-02 (6th Cir. 2008); accord *Solomon v. HSBC Mortg. Corp.*, 395 F. App'x 494, 497 n.3 (10th Cir. 2010). Rushmore's January 19 letter, however, only moves the closure of the statute of limitations from Defendants' proposed November 2016 to January 19, 2017, a year from the date of mailing.

Plaintiff would have the Court measure by date of receipt. However, Courts apply a "bright-line-rule approach in determining when the statute of limitations accrues for harassing collection letters. Instead of running from the date of receipt, the statute runs from the mailing date, as it is 'fixed by objective and visible standards' and 'easy to determine.'" *Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 464 (6th Cir. 2013) (quoting *Mattson v. U.S. West Commc'ns*, 967 F.2d 259, 261 (8th Cir. 1992)). Measuring from the mailing date, Plaintiff's FDCPA claim is barred, unless the Court should opt to toll the statute of limitations. The Court will consider tolling for the FDCPA and TILA statutes after it considers expiration of the TILA statute of limitations.

### B. TILA Claims

With regard the TILA violations, Plaintiff alleges that Rushmore's January 19, 2016 response to Plaintiff's Notice of Error (Exhibit E of Complaint) did not correct errors identified by Plaintiff. ¶36. Rushmore's January 19, 2016 response was not received by Plaintiff until February 2, 2016. ¶31. Rushmore allegedly violated TILA by failing to issue an accurate payoff statement in response to Munoz's September 2015 request and failing to timely apply Munoz's payments. Complaint, ¶¶ 105-107.

The obligation of a servicer to promptly credit home loan payments is set forth in 15 U.S.C. § 1639f, and the obligation to provide an accurate payoff balance is set forth in 15 U.S.C. § 1639g. Unless it arises under sections 1639, 1639b, or 1639c, any action under TILA must be brought within one year from the date of the violation. 15 U.S.C. § 1640(e).

Munoz alleges she requested a payoff statement from Rushmore in September 2015 and received one in October 2015. Complaint, ¶¶ 25-26. To the extent Munoz had a TILA claim based on that payoff statement, it expired in October 2016. 15 U.S.C. § 1640(e). Likewise, the only payments Munoz alleges were not correctly applied were those allegedly made in August and September 2015. Complaint, ¶ 27 and Ex. D. As a result, any claim for failure to timely credit those payments expired, at the latest, in September 2016.

However, Munoz also asserts a violation of TILA regulations that apply to servicers who fail to respond or inadequately respond to a notice of error. Munoz alleges that Rushmore failed to account for her payments to Rushmore on January 29, 2016 and that Rushmore continued to treat the loan as in default when it transferred the loan to Select Portfolio Servicing. The statute of limitations does not begin to run until a plaintiff either discovers or had a reasonable opportunity to discover a TILA violation. *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1039 (6th Cir. 1984).

See also *Ramadan v. Chase Manhattan Corp.*, 156 F.2d 499, 501 (3rd Cir. 1998); *Barrett v. Fifth Third Bank*, 15 CV 00698 (W.D. Ky, Feb. 11, 2016) at Page 4. Thus, Munoz would have the Court compute this time from the date she received the January 19, 2016 letter, which was about February 2, 2016. The complaint was filed January 26, 2017.

Again, the Sixth Circuit would have "the statute run[] from the mailing date, as it is 'fixed by objective and visible standards' and 'easy to determine.'" *Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 464 (6th Cir. 2013) (quoting *Mattson v. U.S. West Commc'ns*, 967 F.2d 259, 261 (8th Cir. 1992)). Measuring from the mailing date, Plaintiff's TILA claim is also barred, unless the Court should opt to toll the statute of limitations.

### C. Tolling

Plaintiff claims that the statute of limitations should have been equitably tolled until she received a copy of the letter. Plaintiff urges that the statute should be tolled because "Rushmore has never taken any action to correct the errors it made in servicing her loan." According to Plaintiff, equitable tolling of the statute should apply to the errors and mistakes caused by Rushmore's mis-handling of her August and September 2015 loan payments and Rushmore's erroneous October 8, 2015 payoff statement, TILA's statute of limitations can be equitably tolled "'until the borrower discovers or had [a] reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action.'" *Vien-Phuong Thi Ho v. Recontrust Co.*, 669 F. App'x 857, 858 (9th Cir. 2016) (quoting *King v. California*, 784 F.2d 910, 914–15 (9th Cir. 1986)). The Court sees no reason to treat the FDCPA differently.

Five factors must be evaluated to determine if equitable tolling is appropriate: "'(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's

reasonableness in remaining ignorant of the [particular] requirement.'" *Lester v. Wow Car Co.*, 675 Fed. App'x 588, 590 (6th Cir. 2017) (citing *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000)).

> Equitable tolling of the statute of limitations may be appropriate for TILA claims involving fraudulent concealment. For equitable tolling to apply, a plaintiff must show 'not only that he exercised due diligence to discover his cause of action prior to the running of the statute, but also that the Defendant was guilty of some affirmative act of fraudulent concealment which frustrated discovery notwithstanding such diligence.

*Ogle v. BAC Home Loans Servicing LP*, 2012 WL 12925834, *8 (S.D. Ohio 2013)(internal citations omitted) (citing *Jones v. TransOhio Savings Ass'n*, 747 F.2d 1037, 1043 (6th Cir. 1984) and quoting *Hughes v. Cardinal Fed. Savings and Loan Ass'n*, 566 F. Supp. 834, 838 (S.D. Ohio 1983)).

Plaintiff would have the court consider application of a 30-day extension period or stay that applies to civil suits as set forth in 11 U.S.C. § 108(c)(2) to be read in conjunction with the stay provisions of 11 U.S.C. § 362(c)(2)(A).

However, 11 U.S.C. § 108(a) is a tolling provision applicable to claims where the statute of limitations has "not expired before the date of the filing of the petition[.]" Here, Munoz's bankruptcy petition was filed on May 9, 2005, and she received a discharge on August 27, 2010. Each of the claims of the Complaint is premised on, or post-dates, the Settlement Agreement between Munoz and Rushmore, which was not executed until 2012. Complaint Ex. A, PAGE ID 23-27. By its own terms, 11 U.S.C. § 108(a) applies to unexpired claims as of the petition date, not claims that arose post-discharge. Thus, 11 U.S.C. § 108(a) does not apply to toll Munoz's TILA claim. The Court concludes that the TILA and FDCPA claims are barred by the statute of limitations and will be dismissed.

**IV.     Conclusion**

Munoz's FDCPA, and TILA claims are barred by the applicable statutes of limitations. Additionally, because Munoz cannot maintain a claim for breach of the implied covenant of good faith and fair dealing independent of her breach of contract claim, they will be dismissed as well. The defamation, good faith and fair dealing, FDCPA, and TILA claims are dismissed (Counts I, III, IV and VI). Only the breach of contract and RESPA claims (Counts II and V) will be permitted to proceed.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, November 21, 2017.


                                                        s/Thomas M. Rose
                                          _____
                                                    THOMAS M. ROSE
                                          UNITED STATES DISTRICT JUDGE